Lyons, Respondent, vs. Rossmeissl and another, Appellants.

*April 13—June 16, 1915.*

*Party walls: Contracts: Adjoining landowners: Common use of strip.*

> Where plaintiff and defendants, who owned adjoining lots and had the right to use in common a three-foot strip of which the fee was in defendants, duly executed a written agreement by which plaintiff, who was about to erect a three-story building, was given the right to build a party wall in accordance with her plans and specifications, partly upon said strip and partly on defendants' land, and it was provided that such wall should be "of sufficient strength to be used for and constitute the west wall of first party's brick building she is to erect and also the east wall of any brick building of a like number of stories or less which second parties . . . may hereafter build upon their lot," such agreement, together with the construction of the wall and the subsequent acts of the parties, defined and fixed their respective rights as to the three-foot strip and the beneficial use thereof during the existence of the buildings contemplated by the agreement, apportioning between them, in accordance with the location of the party wall, the areas on the several floors not occupied by common stairways and passageways. Kerwin, J., dissents.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge.    *Affirmed.*

This is an action to restrain the defendants from tearing down or interfering with a party wall on the third story of the plaintiff's building constructed on the land adjacent to defendants' lot.    A temporary injunction was entered against the defendants pending the action.    The defendants put in issue the material allegations of the complaint and set up several counterclaims.    The controversy arose out of the relative rights of the parties under the following agreement:

"Articles of agreement, made and entered into this 16th day of August, 1897, by and between *Bertha Lyons* of the first part and *J. & M. Rossmeissl* of the second part, all of the city of Appleton, Outagamie county, Wisconsin, witnesseth:

"First. The party of the first part being the owner in fee of the following described piece or parcel of land, situated in the Second ward of said city of Appleton, to wit, the east twenty (20) feet of the west eighty-seven and forty one-hundredths (87 40-100) feet of the north one hundred (100) feet of block five (5), in the Second ward of the city of Appleton; also an undivided interest in that strip of land three (3) feet wide east and west and one hundred (100) feet long north and south, which adjoins said premises on the west, and which strip has been reserved for common use by adjacent owners; together with the perpetual right of way in common with the adjacent proprietors over that certain twenty (20) feet alley as now laid out extending easterly and westerly and abutting said premises on the south; and the parties of the second part being the owners in fee of the adjoining lot and premises on the west, hereby for and in consideration of the covenants hereinafter contained agree as follows:

"Second. The parties of the second part authorize, empower, and grant unto first party the right to erect and construct a party wall partly on the dividing line between said properties and premises and partly on the premises of second parties, which line runs as follows: Commencing at the curb or outer edge of the sidewalk in the center line of said three-feet reservation 'for common use by adjacent owners' and

running thence south twelve (12) feet; thence west three (3) feet two (2) inches; thence south thirty-two (32) feet; thence east three (3) feet two (2) inches to said center line; thence south thirty-nine (39) feet five (5) inches; thence west three (3) feet two (2) inches; thence south twenty-eight (28) feet seven (7) inches to the south end of said one hundred (100) feet, allowing in addition the usual footing for the foundation wall; the said foundation and walls for the three-story building to be built of brick above the stone foundation, and thickness and height to be according to the plans, drawings, and specifications of Philip Dean, architect, for first party's building, and to be one hundred (100) feet in depth back from College avenue; first party to build between the front and rear stairway (as located on said plans and specifications) two stone abutments on which shall be set and placed two iron columns to support the iron I-beams above, and on the third story there shall be a row of I-beams and columns for the support of the roof and third-story ceiling— these columns and I-beams to be built in with masonry so as to form the outside west wall; the first party to furnish all the materials therefor and pay and discharge all claims for the construction and completion of the same—all to be done and completed according to said plans, drawings, and specifications; said foundation, wall, abutments, columns, I-beams, stairs, and stairway (to be built and completed front and rear by first party) to be composed of good material for the purpose and done in a workmanlike manner, including painting, etc., so as to be a complete job; said foundations, abutments, walls, etc., shall be of sufficient strength to be used for and constitute the west wall of first party's brick building she is to erect and also the east wall of any brick building of a like number of stories or less which second parties or their heirs or assigns may hereafter build upon their lot, and chimney flues to be put in west side of said wall (as per said plans, drawings, and specifications) ; and second parties, their heirs or assigns, shall have the right to use said walls, stairs, stairways, pillars, abutments, columns, etc., for any and all purposes necessary to the use and enjoyment of second parties' lot so long as first party's building shall stand (and in case second parties, their heirs or assigns, shall have erected a building on their land previous to the destruction of first party's contemplated building, then so long as both or either

such buildings shall stand). The second parties, however, agree and bind themselves, their and each of their heirs and assigns, that when they or either of them shall erect a building on their lot and land, they or either of them will pay one half ($\frac{1}{2}$) the cost and value of said wall, abutments, columns, beams, stairs, stairways, woodwork, etc., when actually used for the building on their said lot and not before, the amount, price, value, and sum to be paid for shall be the actual cost thereof at the time when actually furnished, completed, and erected, and to be the contract price and prices at which the same shall be let and contracted for and built, to be ascertained, fixed, and determined by said architect or the agreement of the parties hereto, or, in case of the death of said architect, and the parties cannot agree on said sum, then by common-law arbitration, each of the parties choosing a competent disinterested person, and the two so chosen to select a third, and a decision of a majority to be final and conclusive, but the amount not to exceed the cost and contract price aforesaid and to be inserted in this agreement and the duplicate thereof by the parties or one of them or said architect, the payment to be made before the building is begun to be built on second parties' lot; the amount of said cost as fixed is eleven hundred and thirty-six and 12-100 dollars; and in building and connecting with said walls, etc., no connections of woodwork, such as joists, etc., shall be made to connect with woodwork of first party's building.

"Third. It is agreed by the parties that, in order to widen said stairways and entrances thereto, each of said parties shall allow to be included therein from their respective lots two (2) inches more of land.

"Fourth. These articles of agreement shall bind the parties hereto mutually and inure to their benefit, and bind and inure to the benefit of their respective heirs and assigns.

"In witness whereof, the parties have hereto set their hands and seals the day and year first above written: first party by her own proper name, and second parties in their individual and copartnership names.

| "In presence of | BERTHA LYONS. | (Seal.) |
| "Henry D. Ryan. | J. & M. ROSSMEISSL. | (Seal.) |
| "M. Lyons. | Jos. ROSSMEISSL. | (Seal.) |
|  | MATH. ROSSMEISSL. | (Seal.)" |

The agreement was duly acknowledged August 16, 1897.

The court below found, among other things, in substance, that immediately upon the execution of the contract referred to in the statement of facts the plaintiff erected a three-story brick building for store, offices, and lodge rooms in accordance with plans and specifications referred to in said agreement; that said building was completed in 1898 in accordance with the plans and specifications, the party wall being the west line of the building, and said wall was located, placed, and constructed in accordance with the plans and specifications and in accordance with said agreement, and plaintiff ever since has been in the actual occupancy of said building; that during the period of construction of the plaintiff's building the defendants were engaged in business in close proximity to said building and had actual knowledge of the construction, use, and occupancy of said building; that the third story of plaintiff's building is finished off as a public hall, leased and used as such; that on October 25, 1911, the defendants, while in the process of constructing their building, threatened to tear out the party wall on the third floor, and if permitted to do so irreparable damage will result to the plaintiff; that plaintiff has offered to give defendants the right of ingress and egress to the said third story in accordance with the terms of the agreement.

The court concluded as matter of law that the plaintiff was entitled to the relief demanded and made the temporary injunctional order permanent, restraining the defendants from tearing down or injuring the party wall. Judgment was entered accordingly, from which this appeal was taken.

*C. G. Cannon,* for the appellants.

For the respondent there was a brief by *Julius P. Frank,* and a supplemental brief by *Julius P. Frank,* attorney, and *Olin, Butler, Stebbins, Curkeet & Stroud,* and the cause was argued orally by *Mr. Frank* and *Mr. H. L. Butler.*

SIEBECKER, J.   The defendants contend that the trial court erred in restraining them from removing a part of the party wall in the third story of the plaintiff's building.   The court held in effect that defendants relinquished their rights to the common use of a part of the three-foot strip by the party-wall agreement and the erection by plaintiff of her building pursuant thereto.   It is without dispute that at the time this party-wall contract was made the parties had an undivided interest in the common use of the three-foot strip. The contract recognizes it.   It appears that plaintiff at the time the contract was made proposed erecting a three-story building on her lot.   In executing this purpose she desired to use and occupy, to the extent of her interest, the three-foot strip in connection therewith.   The parties undertook to arrange for such use by the party-wall agreement. ·  Under these circumstances the effect of the contract and the construction of the party wall and building by the plaintiff constitute the basis upon which the rights of the parties in this three-foot strip are to be determined.   The plaintiff contends that the provisions of this agreement fix and establish the beneficial use of this strip during the life of her three-story building and the one which the defendants contemplated building when the contract was made.   The contract grants to the plaintiff the right to erect the party wall on the designated dividing line between said properties and partly on the premises of the defendants; that it was to be constructed according to the plans, drawings, and specifications there exhibited to the parties; that two iron columns were to be placed on the abutments between front and rear stairway, as located in the architect's plans, for the support of the I-beams above, "and on the third story there shall be a row of I-beams and columns for the support of the roof and third-story ceiling— these columns and I-beams to be built in with masonry so as to form the outside west wall."   Another provision is: "said

foundations, abutments, walls, etc., shall be of sufficient strength to be used for and constitute the west wall of first party's brick building she is to erect and also the east wall of any brick building of a like number of stories or less which second parties or their heirs and assigns may hereafter build upon their lot." These provisions clearly indicate that the parties intended this wall as the division line of the buildings on their respective lots and necessarily granted to plaintiff the right to inclose the parts of the area, occupied by her building, of the three-foot strip, subject to such right of its use in common as the contract specified. The acts of the parties pursuant to this agreement show that it was understood that their common uses of the strip were fixed and established in connection with their contemplated buildings. They so carried out the contract, and pursuant thereto have occupied the strip on the first and second story of plaintiff's building without controversy. The finding of the trial court that the building was erected pursuant to the plans approved in the contract cannot be disturbed under the facts and circumstances of the case. It must also be considered that the west wall of plaintiff's building is the partition wall between the plaintiff's and defendants' buildings as agreed upon in the contract. The main contention of the defendants rests upon the claim that its right to one half or to the whole of the three-foot strip on the third floor of plaintiff's building is appurtenant to their interest in the fee of such strip, and that they have not relinquished any of their original interest in or right to any beneficial use of the strip. This claim conflicts with the rights granted the plaintiff by the party-wall agreement, which authorized the plaintiff to inclose the portions of this strip lying on the east of the wall, as shown by the architect's plan of her proposed building. The execution of this plan under the party-wall agreement operated to establish the plaintiff's and defendants' rights respectively to the beneficial use of their common interest in this strip. We find no basis for defendants' claim that no such results were

contemplated and intended by the parties when they entered into this contract. Applying the context of the parts of the contract stated above to the subject matter, there is evinced a purpose and intent by the parties to apportion their rights and beneficial uses in this strip, and that such apportionment thereof was in fact established by erecting the party wall as agreed and in using the area of such strip as divided by the party wall. In legal effect these acts constitute a mutual relinquishment thereof to such parts as were not to be used in common under the arrangements embodied in the contract and in the plans and specifications of plaintiff's building, as approved thereby. The result of these transactions is that plaintiff and defendants occupied a part of this strip in common with stair- and passage-ways, and the parts not so occupied by common stair- and passage-ways were apportioned between the parties in accordance with the location of the party wall and the approved plans of plaintiff's building. The evidence sustains the conclusion that the parties gave this party-wall contract a practical construction in harmony with this interpretation of it. Upon these considerations it must follow as a legal conclusion that the contract defined the rights of the parties as to the three-foot strip and fixed the extent of their beneficial use thereof during the existence of plaintiff's proposed building and the contemplated building of the defendants in connection with the proposed party wall. The execution of the agreement, as shown by the evidence, conferred upon the plaintiff the right to use the areas on the respective floors inclosed by the party wall on her side thereof, except the portions which were assigned and occupied by them in common for purposes of stair- and passage-ways and the part defendants occupy on the second floor as toilets, off from the common passageway. *Wallis v. First Nat. Bank,* 155 Wis. 306, 143 N. W. 670. The defendants therefore had no right to take down the partition wall on the third floor for the purpose of entering the area of the three-foot strip allotted to plaintiff under the contract. The judgment.

of the trial court properly restrained defendants from making the threatened entry into plaintiff's building on the third floor through the party wall.

*By the Court.*—The judgment appealed from is affirmed.

The following opinion was filed July 8, 1915:

KERWIN, J. (*dissenting*). I cannot agree with the majority of the court. I think the judgment below should be reversed for the following reasons:

(1) At the time the party-wall agreement was made the title to the three-foot strip was in defendants, subject to an easement in plaintiff for stairway and hall purposes in common with defendants. (2) The title has never been transferred to plaintiff, unless the party-wall contract and the acts of the parties under it had that effect. (3) There is nothing in the party-wall contract impairing the title of defendants. (4) The party-wall contract recognizes the continuing rights of the defendants as owners subject to the easement in plaintiff. At least there is no relinquishment. (5) The manner of construction of the wall supports the idea that the parties understood that the defendants' interest in the strip continued. (6) The evidence and manner of construction of the wall rebuts any presumption that defendants relinquished their interest in the three-foot strip. (7) On the admitted facts no rights have been acquired by plaintiff by estoppel, waiver, or acquiescence. (8) I think the defendants are the owners in fee of the three-foot strip subject to the easement in plaintiff. (9) But in any event the defendants are at least tenants in common with plaintiff of the three-foot strip and are entitled to equal enjoyment with plaintiff of all space embraced within the three-foot strip not occupied by stairways, halls, or supports for plaintiff's building.

Claim was made, but not strenuously pressed, that rights were acquired by plaintiff in the three-foot strip by adverse possession or estoppel. This contention is wholly unsupported by the record and is not made the basis of the decision

of the court. The real contention of plaintiff, and the one upon which the opinion of the court rests, as I understand it, is that the defendants in some way relinquished their rights in the three-foot strip by force of the party-wall contract and the construction of the wall.

In order to support the opinion of this court and warrant an affirmance of the judgment below it must appear that the rights of the defendants in the three-foot strip were relinquished either by the terms of the contract, or by the terms of the contract and the acts of the parties under it. Upon the undisputed evidence neither position can be sustained.

The defendants owned property west of and adjacent to plaintiff's property, described in a warranty deed to them as follows:

"Commencing in the south line of College avenue and the north line of block five (5) of the Appleton plat in the Second ward, city of Appleton, and seventy-five (75) feet west of the center of said block five (5), and thence running west twenty-three (23) feet, thence south one hundred and twenty (120) feet, thence east twenty-three (23) feet, thence north one hundred and twenty (120) feet to College avenue to the place of beginning. Being same land described in volume 47 of Deeds, page 468. Reserving therefrom the unobstructed right of way for travel with teams over the south twenty (20) feet of the above described land and reserving therefrom the right of way over the east three (3) feet to be occupied and used jointly and forever by and between the two owners of this tract and the adjoining twenty (20) feet east of this described tract."

The above conveyance covers the three feet in question; and the only interest which plaintiff had when the party-wall contract was made was the right of way described in the conveyance to defendants.

Assuming to act under the agreement set out in the statement of facts, the plaintiff in 1897 and 1898 constructed a three-story building upon her property. Although the court found that the building was constructed according to plans

and specifications there is no proof that it was so built, unless it can be inferred from the evidence that the building was constructed and that there were plans and specifications. It appears from the record that the wall was not built upon the line described in the contract, but was built upon the following described line: Starting at the east line of defendants' lot and the west line of the three feet, running south from the north end of the building thirty-two feet, then jogged to the east one and one-half feet, then south thirty-nine feet, then jogged back to the west one and one-half feet to the west line of the three feet, and then ran on said line south to the end of the lot.   On each end of this jog thirty-nine feet long and on the west line of the three feet were placed stone abutments upon which rested I-beams to support the wall above. Over these I-beams and on a line with the west line of the three feet the wall was extended through the second to the third story, and I-beams placed in the wall between the second and third stories.   Front and rear stairways were built from the first to the second story, and a rear stairway only from the second to the third story.

The defendants constructed their building in 1911, and when they reached the second story the wall on that floor was torn out front and rear to afford defendants access to their offices and to run a stairway in the rear to the third story. The space on the second floor between the front and rear stairways was occupied by toilets in the center, leaving a passageway on each side, the toilets on the west side being for the use of defendants' tenants and on the east side for plaintiff's tenants, and doors provided openings for passage to hallways into the offices on either side.   Defendants built their own stairway west of the wall from the second to the third floor.

In the construction of their building the defendants attempted to break out the wall north of the rear stairway, claiming the right to the whole or part of the three-foot space

east of the wall and not occupied in common and included in the plaintiff's inclosure on the third floor east of the wall. The injunction awarded below restrained such interference.

It appears from the evidence that no wall was called for in the specifications on the third floor, but it was extended directly over the wall on the second floor and on the west line of the three feet, and I-beams constructed therein so that the wall could be removed and the beams remain to support the structure above.

The evidence also shows that blind doors or openings were left in the wall on the second and third floors, and that there was some talk of using the third floor over both buildings as a common hall; also that the beams were placed in the wall on the third floor so that the wall could be removed, leaving the beams for support.

The production of the plans and specifications of plaintiff's building was demanded by defendants upon the trial below, but they were not produced and no proof made of their contents.

There is no evidence that the defendants consented or agreed that the party wall constructed by plaintiff should be the dividing line between the real estate of plaintiff and defendants, unless it can be said that the contract and acts of the parties under it furnish such evidence. There is no evidence that the defendants acquiesced in the manner of the construction of plaintiff's building or relinquished their rights in the three-foot strip. The deed in evidence shows title in defendants of the three-foot strip subject to the easement in plaintiff, and the party-wall contract recites that the plaintiff has "an undivided interest in that strip of land three feet wide east and west, and one hundred feet long north and south, which adjoins said premises on the west, and which strip has been reserved for common use by adjacent owners." Counsel for plaintiff in their brief say: "But it is undisputed that the rights of plaintiff and defendants in

and to this three-foot strip are equal and the same." This is the most favorable construction to plaintiff that the record will bear. The acts of the plaintiff in constructing the wall seem to indicate that that was her construction of the party-wall contract, because on the first floor the wall in the middle and between the stairways was constructed in the center of the three-foot strip, and on the second floor the three-foot strip was used in common without objection from plaintiff. So there is nothing in the evidence, aside from the express terms of the party-wall contract, which tends in the slightest degree to show that the defendants relinquished any of their rights in the three-foot strip.

The opinion of the court seems to be based upon the theory that the following part of the contract has that effect, namely:

"And on the third story there shall be a row of I-beams and columns for the support of the roof and third-story ceiling, and these columns and I-beams to be built in with masonry so as to form the outside west wall." . . . "Said foundations, abutments, walls, etc., shall be of sufficient strength to be used for and constitute the west wall of the first party's brick building she is to erect and also the east wall of any brick building of a like number of stories or less which second parties or their heirs and assigns may hereafter build upon their lot."

Now, assuming as most favorable to the plaintiff that the defendants were tenants in common with plaintiff in the three-foot strip, these provisions did not transfer to the plaintiff all the defendants' interest in the three-foot strip on the third floor. The fact that the wall was to be used as the west wall of plaintiff's building and the east wall of the defendants' building did not transfer the defendants' interest in the whole strip to plaintiff, or deprive the defendants of their right to use the space in common with plaintiff in any manner not inconsistent with the easement in the same in the same manner that the first and second floors were used. The manner of construction and the evidence show that there was no relinquishment by defendants of their interest.

The decision of this court holds that the party-wall contract and construction of the wall under it had the effect of depriving the defendants of all use of the three-foot strip not occupied by the rear stairway and opening and gives the exclusive use of all the unoccupied space on the third floor over the three-foot strip to plaintiff. This in my opinion is wrong. The defendants cannot be divested of their interest in the three-foot strip by assumption or presumption. Sec. 2302, Stats. The party-wall contract does not convey to plaintiff the defendants' interest in the land upon which the wall stands, much less the part of the three-foot strip east of the wall. *Andrae v. Haseltine,* 58 Wis. 395, 17 N. W. 18; Washburn, Easem. & Serv. (3d ed.) 564.